## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **VERNON L. BEAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16−cv–1211−MJR** |
| | ) | |
| **LISA MADIGAN,** | ) | |
| **SA GODINEZ,** | ) | |
| **GLADYSE TAYLOR,** | ) | |
| **JOHN BALDWIN,** | ) | |
| **JASON GARNETT,** | ) | |
| **YLONDA HARRINGTON,** | ) | |
| **CONNIE HOLIDAY,** | ) | |
| **ROBERT GADUS,** | ) | |
| **JESSICA STOVER,** | ) | |
| **ALYSSIA WILLIAM SHAFFER,** | ) | |
| **ZACHARY ROECKMAN,** | ) | |
| **THOMAS AUSTIN,** | ) | |
| **CHRISTOPHER CRAIG,** | ) | |
| **DANNY SULLIVAN,** | ) | |
| **ANGLEA WINSLOR,** | ) | |
| **LISA ASHBURY,** | ) | |
| **CINDY GARETTEY,** | ) | |
| **and THOMAS HOLT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

Plaintiff Vernon Beam, an inmate in Big Muddy River Correctional Center ("Big Muddy"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff claims that his constitutional rights as a civil detainee under the Illinois Sexually Dangerous Persons Act (the "SDP Act") have been violated repeatedly by the defendants, particularly since Plaintiff was allegedly ordered released in June 2013. This case is

now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).   An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557.   At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Initially, the Court must independently evaluate the substance of Plaintiff's claim to determine if the correct statute—in this case 42 U.S.C. § 1983 or 28 U.S.C. § 2254—is being invoked. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (dismissing § 1983 claims that should have been brought as petitions for writ of habeas corpus); *Bunn v. Conley*, 309 F.3d 1002, 1006–07 (7th Cir. 2002) (district court should not have re-characterized declaratory judgment action as petition for habeas corpus); *Godoski v. United States*, 304 F.3d 761, 763 (7th Cir. 2002) (court

must evaluate independently the substance of the claim being brought, to see if correct statute is being invoked). A petition for a writ of habeas corpus is the proper route "[i]f the prisoner is seeking what can fairly be described as a quantum change in the level of custody-whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation." *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991).

Plaintiff is, in part, seeking an order directing defendants to release him from custody. (Doc. 1, p. 94). He cannot bring such a request in the context of this civil rights case under § 1983. Instead, he must bring a petition for habeas corpus relief under § 2254 seeking such relief in order to secure his release. To the extent any of Plaintiff's claims seek to obtain his release, they are dismissed with prejudice, though Plaintiff may bring a petition for habeas corpus relief instead. Further, any claims Plaintiff seeks to bring requesting compensation for his not being released are considered dismissed without prejudice. *Thomas v. Schmitt*, 380 F.. App'x 549, 550 (7th Cir. 2010) (civil detainee "may not sue for damages under § 1983 unless and until his commitment has been invalidated") (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## The Complaint

In his Complaint (Doc. 1), Plaintiff makes the following allegations: Plaintiff is a civilly committed pretrial detainee at Big Muddy who has been incarcerated as a sexually dangerous person ("SDP") under the SDP Act since 1992. (Doc. 1, p. 22). Plaintiff was deemed no longer sexually dangerous May 14, 2013 and was ordered to be released on conditional release conditions by Judge James B. Stewart of Knox County Circuit Court on June 14, 2013. (Doc. 1,

pp. 42, 54).  Plaintiff was not released at that time.  *Id.*  On December 5, 2013, the committing court issued another order requiring Plaintiff to be released to his brother's home within ten days.  *Id.*  Defendants Godinez and Taylor disobeyed that order and did not release Plaintiff, and Baldwin has similarly not released Plaintiff since.  *Id.*  Agents and employees of Godinez, Taylor, and Baldwin have verbally threatened and "communicated to family members of the Plaintiff to not provide housing to the Plaintiff."  (Doc. 1, p. 44).  Agents and employees of Godinez, Taylor, Baldwin, and Shaffer have also discouraged potential landlords from renting to Plaintiff and have identified the Plaintiff as an SDP to potential landlords.  *Id.*  Godinez, Taylor, and Baldwin failed to properly supervise and train their agents and employees as to how to treat Plaintiff and other SDPs.  (Doc. 1, p. 46).  Further, these actions represent the "policy, custom, and/or practice of" Godinez, Taylor, Baldwin, Shaffer, Roeckman, Garnett, and Winslor.  (Doc. 1, pp. 48, 58).

Godinez, Taylor, and Baldwin have denied Plaintiff access to a phone to search for appropriate housing.  (Doc. 1, p. 52).  Further, the Illinois Department of Corrections ("IDOC") does not provide transitional housing facilities for indigent SDP's with conditional release conditions.  *Id.*  However, IDOC does provide such transitional housing to criminally convicted sex offenders.  *Id.*  Up until the day this suit was filed, Madigan's office had not yet found appropriate housing for the Plaintiff despite an order issued in June 2014 by Judge Stewart requiring the Illinois Attorney General's office "to show how IDOC is looking for housing for the Plaintiff every thirty days."  (Doc. 1, p. 53).  Instead, Shaffer consistently refuses to approve potential parole sites for the Plaintiff.  *Id.*

"Plaintiff has been diagnosed with several 'mental impairments.'"  (Doc. 1, p. 62).  "Plaintiff is a disabled American."  *Id.*  Plaintiff alleges has a right to receive treatment so as to

effectuate recovery as a civil detainee.   (Doc. 1, p. 88).   Plaintiff was deemed ready for "Community Base Care and treatment" by Judge Stewart and a state psychologist.   (Doc. 1, p. 63).   On June 14, 2013, Judge Stewart ordered that the Plaintiff attend "AA Counseling, Anger Management Counseling, Relapse Prevention Counseling, and After Care Counseling in his conditional release conditions."   (Doc. 1, p. 86).   Defendants Madigan, Godinez, Taylor, Baldwin, Shaffer, Roeckman, Austin, Craig, Garnett, Harrington, and Holt are depriving Plaintiff of "uninstitutionalized" care, to which he has a right per the determination by Judge Stewart. (Doc. 1, p. 63).   Further, Holt has stated that there is no AA Counseling at Big Muddy for civilly committed SDPs.   (Doc. 1, p. 86).   The Plaintiff also does not qualify for anger management counseling at Big Muddy, and Big Muddy does not have a licensed facilitator to provide it regardless.   *Id.*   Holt has also stated that Plaintiff does not qualify for relapse prevention counseling at present.   *Id.*   Baldwin, Shaffer, Garnett, Harrington, and Holt do not have an After Care Program at Big Muddy for civilly committed SDPs, though they do for the volunteer convicted sex offender program.   (Doc. 1, p. 87).   Baldwin has failed and continues to fail to ensure Plaintiff is receiving his court-ordered counseling and treatment.   *Id.*   He has intentionally failed to provide mental health treatment, and has failed to enact adequate procedures, training, personnel, staffing, and facilities to address the serious therapeutic needs of Plaintiff.   *Id.*

Plaintiff is also being deprived of his right to the "least restrictive environment possible to protect society" so that he might interact with non-disabled persons by Madigan, Godinez, Roeckman, Craig, Austin, Baldwin, Shaffer, Garnett, Sullivan, Harrington, Stover, and Holt. (Doc. 1, pp. 63-65).   This type of environment was ordered by Judge Stewart on May 14, 2013. *Id.*   Godinez, Taylor, Baldwin, Shaffer, Roeckman, Craig, Austin, Garnett, Sullivan, Harrington, Stover, and Holt failed to properly advise, train, and supervise their agents and employees

regarding the regulations of the Americans with Disabilities Act, and subjecting Plaintiff to discrimination related to his disability is a matter of custom, policy, and practice for these defendants. (Doc. 1, pp. 67, 69, 72, 90, 92-93).

Employees and agents of Godinez, Taylor, Baldwin, Roeckman, Austin, Craig, Garnett, and Sullivan subjected Plaintiff to unnecessary and improper restraints as well as searches as seizures repeatedly, including by members of the opposite sex, before and after meeting with visitors, before and during transportation, after receiving medical treatment or visiting the medical center, before and during court, while being transported to court appointments, and before, after, and during prison lockdowns. (Doc. 1, pp. 75-76). Godinez, Taylor, Roeckman, Austin, Craig, Baldwin, Garnett, and Sullivan failed to properly train and supervise their employees and agents in order to prevent these violations, and also maintained a policy, custom, and practice of allowing such violations. (Doc. 1, p. 78-80).

Plaintiff alleges that the defendants' mistreatment of him was done as a form of punishment and was not reasonably related to any legitimate government objective. (*See* Doc. 1, pp. 57, 66, 78, 89). As a result of the actions of the defendants, Plaintiff claims he has suffered severe emotional, mental, and physical distress. (Doc. 1, p. 45, 49, 56, 83). In his request for relief, Plaintiff demands immediate release from Big Muddy. (Doc. 1, p. 94). Plaintiff also seeks a permanent injunction ordering IDOC procedures be enacted so that transitional housing facilities are provided to civilly committed SDPs on conditional release conditions. (Doc. 1, pp. 54-55). Similarly, Plaintiff seeks a permanent injunction ordering procedures be enacted to ensure IDOC obeys the regulations of the ADA with respect to civilly committed SDPs on conditional release conditions. (Doc. 1, p. 55). Plaintiff also seeks monetary damages for the

alleged violations and a preliminary injunction preventing the defendants from violating Plaintiff's legal rights further.  *Id.*

<u>Discussion</u>

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 6 counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1** – Beginning June 14, 2013, Madigan, Godinez, Taylor, Baldwin, Shaffer, Roeckman, Austin, Craig, Garnett, Sullivan, Harrington, Stover, and Holt failed to provide Plaintiff with treatment in order to effectuate his recovery, including by failing to make available certain treatment programs and failing to put Plaintiff in the least restrictive environment possible, in violation of the Fourteenth Amendment.

**Count 2** – Godinez, Taylor, Baldwin, Shaffer, Roeckman, Garnett, and Winslor's agents and employees denied Plaintiff access to a phone to search for housing**,** discouraged family members and potential landlords from housing Plaintiff, and informed potential landlords that Plaintiff is an SDP, pursuant to a policy of these defendants to interfere in Plaintiff's search for housing in violation of the Due Process Clause of the Fourteenth Amendment.

**Count 3** – Defendants failed to provide Plaintiff with institutionalized care for his mental impairments, including by failing to make available certain treatment programs and failing to put Plaintiff in the least restrictive environment possible, in violation of the Americans with Disabilities Act and the Rehabilitation Act.

**Count 4** – Defendants have violated Plaintiff's Equal Protection rights under the Fourteenth Amendment by implementing a policy in which their employees and agents treat SDPs differently from others, including by providing transitional housing and after care programs to criminally convicted sex offenders but not SDPs.

**Count 5** – Beginning June 14, 2013 and continuing to the present, employees and agents of Godinez, Taylor, Baldwin, Roeckman, Austin, Craig, Garnett, and Sullivan repeatedly violated Plaintiff's right to be free from improper restraints and improper searches and seizures under the Fourth Amendment, pursuant to a policy of the defendants.

**Count 6** – Defendants violated the SDP Act, 725 Ill. Comp. Stat. 205/1 et seq., the Transitional Housing for Sex Offenders Law, 730 Ill. Comp. Stat.  5/3-17-

1, and the Fair Housing Opportunity Act, 42 U.S.C. §§ 3601 et seq., with respect to their treatment of Plaintiff and failure to provide him with transitional housing.

As discussed in more detail below, Counts 3 through 6 will be dismissed for failing to state a claim upon which relief may be granted.  Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

### Count 1 – Failure to Treat Civil Detainee

Plaintiff has the constitutional right as a civilly committed person to receive treatment during his confinement.  *See Hughes v. Dimas*, 837 F.3d 807 (7th Cir. 2016) ("the Supreme Court understands the Fourteenth Amendment to require that civil detainees receive treatment for the disorders that led to their confinement and be released when they've improved enough no longer to be dangerous."); *Dinwiddie v. Carich*, Case No. 11-127-GPM, 2011 WL 4916441, at *4 (S.D. Ill. Oct 17, 2011) (citing *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003); *Smart v. Simonson*, 867 F.2d 429, 433 (7th Cir. 1989); *Stachulak v. Coughlin*, 364 F. Supp. 686, 687 (N.D. Ill. 1973)).  Despite this right, Plaintiff has claimed that he is not receiving appropriate treatment so as to effectuate his recovery.  (Doc. 1, pp. 86-87).

Despite the great length of Plaintiff's Complaint, he gives little factual detail as to who may be directly responsible for his lack of treatment.  However, the Court is required to give liberal construction to Plaintiff's Complaint at the threshold review stage.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).  Plaintiff includes allegations that Holt, Harrington, Craig, Shaffer, Godinez, Taylor, Baldwin, and Stover have some say over the treatment that is provided to SDPs.  Further, Garnett would be responsible for implementing any injunctive relief that is ordered as warden of Big Muddy, and both Garnett and Roeckman, as

current and former wardens, would have likely been involved in the implementation of the alleged policy against treating SDPs.  *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).  Therefore, Plaintiff's failure to provide treatment claim in Count 1 will proceed against Godinez, Taylor, Baldwin, Holt, Garnett, Harrington, Craig, Shaffer, Roeckman, and Stover.

However, Count 1 will not proceed against Madigan, Sullivan, and Austin, as Plaintiff did not provide information as to how these particular defendants could be considered directly responsible for his treatment deprivation, these defendants would not be responsible for implementation of any injunctive relief ordered, and these defendants may not be held liable solely on a theory of *respondeat superior* due to the nature of this action.  *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) ("The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be personally responsible for the deprivation of a constitutional right.") (citations omitted).  Further, though Plaintiff alleges this failure to treat was based on a policy of the defendants, he has not alleged any facts connecting these particular defendants with the implementation of such a policy, and this Court will not infer such a connection.

### Count 2 – Interference with Housing Search
### in Violation of Due Process Clause

Plaintiff claims that "agents and employees" of Godinez, Taylor, Baldwin, Shaffer, Roeckman, Garnett, and Winslor have interfered with his attempts to secure appropriate housing that would satisfy the conditions of his release by denying him access to a phone to search for housing**,** discouraging family members and potential landlords from housing him, and informing

potential landlords that Plaintiff is an SDP, in violation of the Due Process Clause of the Fourteenth Amendment. (Doc. 1, pp. 44, 52).

"The Due Process Clause applies when government action deprives a person of liberty or property." *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979). As discussed herein, the violation of a civil detainee's right to treatment may give rise to a due process claim because a civil detainee must recover in order to secure his release. *See Dimas*, 837 F.3d at 807. Under this same reasoning, government actors indiscriminately blocking a civil detainee from arranging his post-release housing, which also must be accomplished prior to his release, could conceivably constitute a deprivation of liberty without due process and also give rise to a viable constitutional claim.

Plaintiff's due process claims in Count 2 will therefore be allowed to proceed against Godinez, Taylor, Baldwin, Shaffer, Roeckman, Garnett, and Winslor.

### Count 3 – ADA and Rehabilitation Act Failure to Provide Care

Plaintiff claims that he was discriminated against in violation of the ADA and Rehabilitation Act when he was deprived of specific care for his disability. "In order to make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). The Rehabilitation Act further requires that a plaintiff show that the program in which he was involved received federal financial assistance. *Id.* at 810 n.2; *see also* 29 U.S.C. § 794(a)." *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974 (7th Cir. 2015). No. 14-2663, 2015 WL 525826, at *5 (7th Cir. Feb. 10, 2015). The

ADA applies to state prisons, and all such institutions receive federal funds. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998). Thus, the two statutory schemes are applicable to this situation.

Plaintiff has failed to show that he suffers from a disability as defined in the ADA and Rehabilitation Act. Plaintiff claims to have been diagnosed with "several 'mental impairments." (Doc. 1, p. 62). While mental disabilities may give rise to ADA and Rehabilitation Act claims, Plaintiff does not go on to describe his "mental impairments" or how they may constitute a disability. *Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 671 (7th Cir. 2012). This Court can only assume Plaintiff's claimed disabilities relate to his status as an SDP, but even that is not clear. Plaintiff may not simply rely on the fact that he has been deemed an SDP by the State of Illinois to prove that he is disabled under the ADA and Rehabilitation Act. With only Plaintiff's unsubstantiated claims and bare legal conclusions to go on as to his alleged disability, this Court does not consider Plaintiff to have sufficiently alleged that he is disabled. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). Plaintiff has therefore failed to state a valid claim under the ADA and Rehabilitation Act.

Had Plaintiff adequately pleaded that he suffers from a disability as defined in the statutes, Plaintiff's claims under the ADA and Rehabilitation Act likely still would have failed. Plaintiff has failed to show that he was excluded from programs or otherwise discriminated against based on his disability, whatever it may be. He claims the treatment available to him can be distinguished from that available to criminally convicted sex offenders, but different treatment of individuals based on their conviction or lack thereof for a sex offense does not give rise to an

ADA or Rehabilitation Act claim.  Furthermore, because criminally convicted sex offenders, who might have the same or similar mental disabilities to Plaintiff, are allowed to participate in these programs, it does not seem plausible that these disabilities as applied to Plaintiff could be the reason for Plaintiff's exclusion.

Further, although Plaintiff has named a number of officials in connection with the factual allegations supporting this claim, the only proper defendant in a claim under the ADA or Rehabilitation Act is the state agency (or a state official acting in his or her official capacity). "[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA."  *See* 29 U.S.C. § 794(b); 42 U.S.C. § 12131." *Jaros*, 684 F.3d at 670 (additional citations omitted).  Plaintiff failed to name the Illinois Department of Corrections as a defendant to this action, so the only defendant this claim could have proceeded against was Baldwin, in his official capacity only, as the Director of IDOC.

Finally, Plaintiff also claims that certain defendants violated the ADA and Rehabilitation Act by failing to release him from confinement, in that they are unlawfully depriving him of his "right to uninstitutionalized care" and to the "least restrictive environment possible."  (Doc. 1, pp. 63-64).  To the extent Plaintiff seeks release as part of his relief, or monetary damages due to the defendants' failure to release him, such a request is not appropriate in this action under § 1983 as is explained herein.  *See Thomas v. Schmitt*, 380 F. App'x 549, 550 (7th Cir. 2010) (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (holding a claim for damages related to validity of confinement that has not been invalidated is not cognizable under § 1983)); *Preiser v. Rodriguez*, 411 U.S. 475 (1973) (holding habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release).

Based on the foregoing reasons, Plaintiff's claims under the ADA and Rehabilitation Act will be dismissed in their entirety.

### Count 4 – Equal Protection

Plaintiff alleges that he was discriminated against by the defendants, seemingly in violation of the Equal Protection Clause of the Fourteenth Amendment.  (Doc. 1, p. 7).  "To show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motived by a discriminatory purpose."  *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001).  Actions may have discriminatory effect when they cause a plaintiff to be treated differently from other similarly situated individuals.  *Id.* at 636.  Further, to state a claim for violation of the Equal Protection Clause, plaintiffs usually must allege that they are members of a "suspect class."  *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009).  "Prisoners are not a suspect class; conviction of crime justifies the imposition of many burdens."  *Johnson v. Daley*, 339 F.3d 582, 585-586 (7th Cir. 2003).

A plaintiff can also allege that the defendant discriminated against the plaintiff in particular—so called "class-of-one" claims.  Such claims require the plaintiff to allege that "the plaintiff has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment."  *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009).  To plausibly allege such a claim, the "plaintiff must negate any reasonably conceivable state of facts that could provide a rational basis."  *Jackson v. Village of Western Springs*, 612 F. App'x 842, 847 (7th Cir. 2015).

Plaintiff alleges that the defendants' discrimination against him is based upon his status as an SDP.  (*See* Doc. 1, p. 43).  However, if he intended to bring a "class of one" claim, the

result would be the same.  Plaintiff complains of how defendants "treat and communicate with" him, as well as how criminally convicted sex offenders have more treatment options than SDPs and are provided with transitional housing when SDPs are not.  (Doc. 1, pp. 43, 52, 87).  These claims are not enough.  Plaintiff has not alleged that he is in a suspect class.  Further, Plaintiff has not negated any reasonably conceivable set of facts that could provide a rational basis for his lack of identical benefits to sex offenders with criminal convictions.  In fact, Plaintiff has not provided any facts to show why he believes "the nature of his confinement" is the reason he is the subject of discrimination.  (Doc. 1, p. 43).  Plaintiff also fails to describe the allegedly discriminatory way defendants "treat and communicate with Plaintiff" so as to support his legal conclusion that it is unconstitutional.

In the absence of these facts, Plaintiff has failed to state an equal protection claim upon which relief may be granted.  Count 4 shall therefore be dismissed.  Out of an abundance of caution, this dismissal shall be without prejudice.

### Count 5 –Improper Restraints, Searches, and Seizures

Plaintiff claims that defendants, through their agents and employees, demonstrated deliberate indifference to his constitutional right to be free from unnecessary restraints, searches, and seizures.  (Doc. 1, p. 75).  In the Complaint, Plaintiff fails to indicate who physically subjected him to these searches, seizures, and restraints and why he believes they were "unnecessary" and "improper."  Instead, Plaintiff cites several *types* of instances in which he has been subjected to restraints, searches, and seizures, including "before and after meeting with visitors," and "before, after and during prison lockdowns."  (Doc. 1, p. 75).  He then concludes, without further description or explanation, that these instances, occasionally involving members of the opposite sex, violated his constitutional rights.  (Doc. 1, pp. 75-76).

The imposition of searches, seizures, and restraints is not necessarily unconstitutional as applied to civil detainees. *See Levi v. Thomas*, F. App'x 611, 612-613 (7th Cir. 2011) (black box restraint held not to affect protected liberty interest, even for civil detainee); *Allison v. Snyder*, 332 F.3d 1076 (7th Cir. 2003) (detainees "may be subjected to conditions that advance goals such as preventing escape and assuring the safety of others"); *Thielman v. Leeann*, 282 F.3d 478 (7th Cir. 2002) (no liberty interest in avoiding restraints while being transported outside a mental health facility). The Complaint lacks any detail that would support the notion that the "restraints, searches, and seizures" he was subjected to were unconstitutional or ran afoul of any protected liberty interest. Plaintiff therefore fails to state a claim upon which relief can be granted under the *Twombly* pleading standard, and Count 5 will be dismissed without prejudice.

### Count 6 – SDP Act, Transitional Housing for Sex Offenders Law, and Fair Housing Opportunity Act

The Complaint alleges that defendants have violated the SDP Act, 725 Ill. Comp. Stat. 205/1 et seq., the Transitional Housing for Sex Offenders Law, 730 Ill. Comp. Stat. 5/3-17-1, and the Fair Housing Opportunity Act, 42 U.S.C. §§ 3601 et seq. These claims will not be allowed to proceed.

With respect to the Illinois statutes, the United States Supreme Court and the Seventh Circuit have long held that "the Constitution does not compel states to follow their own laws.... Nor does it permit a federal court to enforce state law directly." *Allison v. Snyder*, 332 F.3d 1076, 1078-79 (7th Cir. 2003), (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Serv.*, 489 U.S. 189, 202 (1989); *Snowden v. Hughes*, 321 U.S. 1, 11 (1944); *Archie v. Racine*, 847 F.2d 1211, 1215–18 (7th Cir. 1988) (en banc); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)). "Although *Ex parte Young*, 209 U.S. 123 (1908), permits prospective relief against a state official to ensure future compliance with federal law, this approach does not apply

to claims under state law." *James v. Madigan*, 373 F. App'x 619, *2 (7th Cir. 2010) (citing *Pennhurst*, 465 U.S. at 106). In addition, if Plaintiff seeks the implementation of a new law, it would be the role of the state legislature.

With respect to Plaintiff's complaint that defendants have violated the Fair Housing Opportunity Act in their failure to provide him transitional housing and/or their alleged interference with his housing search, this is simply false.   Nothing in the Fair Housing Opportunity Act guarantees him anything based on his status as an SDP.   The Fair Housing Opportunity Act prevents discrimination in housing, to be sure, but it only does so for discrimination based on race, color, religion, sex, familial status, handicap, or national origin.   42 U.S.C. § 3604.   If Plaintiff intends for his alleged "mental impairments" to constitute a handicap, he has failed to explain how they "substantially limit[] one or more of [his] major life activities," per the definition of "handicap" in the statute.   42 U.S.C. § 3602(h).

Accordingly, Count 6 shall be dismissed for failure to state a claim upon which relief may be granted.

## Extraneous Defendants

Plaintiff fails to allege a connection between several defendants listed in the caption of his Complaint and his various claims.   These defendants include Gadus, Ashbury, Holiday, and Garettey. The Court is therefore unable to ascertain what claims, if any, Plaintiff has against these defendants.   The reason that plaintiffs, even those proceeding *pro se* for whom the Court is required to liberally construe complaints, are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint.   *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Thus, where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

Because Plaintiff has not made allegations against Gadus, Ashbury, Holiday, and Garettey elsewhere in his Complaint, he has not adequately stated claims against these individuals, or put them on notice of any claims that Plaintiff may have against them.  For this reason, Gadus, Ashbury, Holiday, and Garettey will be dismissed from this action without prejudice.

## **Preliminary Injunction**

Despite Plaintiff's request for such relief, the allegations in Plaintiff's Complaint do not support the issuance of a preliminary injunction.  A preliminary injunction is issued only after the adverse party is given notice and an opportunity to oppose the motion.  *See* FED. R. CIV. P. 65(a)(1).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).  *See also Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

Plaintiff has not demonstrated that he faces any immediate or irreparable injury or loss that warrants this drastic form of relief.  Further, the only specific immediate relief Plaintiff requests is his release from confinement, and as discussed herein, such a demand must be brought in a habeas corpus action.  Plaintiff's demand for injunctive relief will therefore be denied.

## Pending Motions

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which is **REFERRED** to United States Magistrate Judge Stephen C. Williams for a decision.

Plaintiff has filed a Motion for Service of Process at Government Expense (Doc. 4), which is **DENIED** as moot because Plaintiff has been granted pauper status.  Service shall be ordered below.

Plaintiff's request for a preliminary injunction is hereby **DENIED** for the reasons stated above.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **GODINEZ**, **TAYLOR**, **BALDWIN**, **HOLT**, **GARNETT**, **HARRINGTON**, **CRAIG**, **SHAFFER**, **ROECKMAN**, and **STOVER**. This claim is **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted against them.

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **GODINEZ**, **TAYLOR**, **BALDWIN**, **SHAFFER**, **ROECKMAN**, **GARNETT**, and **WINSLOR**. This claim is **DISMISSED** without prejudice against all other defendants for failure to state a claim upon which relief may be granted against them.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED without prejudice** against all defendants for failure to state a claim upon which relief may be granted against them.

**IT IS FURTHER ORDERED** that **COUNT 4** is **DISMISSED without prejudice** against all defendants for failure to state a claim upon which relief may be granted against them.

**IT IS FURTHER ORDERED** that **COUNT 5** is **DISMISSED without prejudice** against all defendants for failure to state a claim upon which relief may be granted against them.

**IT IS FURTHER ORDERED** that **COUNT 6** is **DISMISSED without prejudice** against all defendants for failure to state a claim upon which relief may be granted against them.

**IT IS ORDERED** that **GADUS, ASHBURY, GARETTEY, MADIGAN, SULLIVAN, HOLIDAY**, and **AUSTIN** are **DISMISSED** without prejudice because the Complaint fails to state a claim for relief against these defendants.

**IT IS FURTHER ORDERED** that as to **COUNTS 1** and **2** the Clerk of Court shall prepare for **GODINEZ**, **TAYLOR**, **BALDWIN**, **HOLT**, **GARNETT**, **HARRINGTON**, **CRAIG**, **SHAFFER**, **ROECKMAN**, **WINSLOR**, and **STOVER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If any defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if

not known, the defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon each defendant (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on the defendant or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 3).  Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 21, 2017**

s/ MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**